# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

RACHEL WELTY, *et al.*,

*Plaintiffs-Appellees/Cross-Appellants*

v.

BRYANT C. DUNAWAY, *et al.*,

*Defendants-Appellants/Cross-Appellees*

———————————————

On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville
Case No. 3:24-cv-768

———————————————

**BRIEF OF THE COMMONWEALTH OF KENTUCKY
AND 18 ADDITIONAL STATES AS AMICI CURIAE
IN SUPPORT OF APPELLANTS**

———————————————

Russell Coleman
 *Attorney General*
Matthew F. Kuhn
 *Solicitor General*
John H. Heyburn
 *Principal Deputy Solicitor General*
Caleb B. Childers
 *Assistant Solicitor General*

Office of the Kentucky
Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Jack.Heyburn@ky.gov
Caleb.Childers@ky.gov

*Counsel for Amici States*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTERESTS OF AMICI CURIAE ............................................................................ 1

INTRODUCTION .................................................................................................... 2

ARGUMENT ............................................................................................................ 4

   I. Circuit precedent bound the district court to issue only a party-specific injunction ............................................................................................................... 4

   II. *CASA* forecloses statewide injunctions that are not party-specific. .............. 7

   III. The district court's reasons for distinguishing *CASA* fail. ......................... 14

CONCLUSION ........................................................................................................ 18

ADDITIONAL COUNSEL ...................................................................................... 20

CERTIFICATE OF COMPLIANCE ....................................................................... 22

CERTIFICATE OF SERVICE ................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez,*
  585 U.S. 579 (2018)...................................................................................1

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
  595 U.S. 267 (2022)...................................................................................1

*Commonwealth ex rel. Coleman v. Ky. Educ. Ass'n,*
  2025 WL 728078 (Ky. App. Mar. 7, 2025), *discretionary review granted* Nos. 2025-SC-0135, 2025-SC-0137 (Ky.) .....................................................18

*Commonwealth v. Biden,*
  57 F.4th 545 (6th Cir. 2023) .............................................................. 3, 5, 6

*Doran v. Salem Inn,*
  422 U.S. 922 (1975)............................................................................. 16, 17

*Ex parte Young,*
  209 U.S. 123 (1908)..................................................................................14

*Griffin v. HM Florida-ORL,*
  144 S. Ct. 1 (2023)...................................................................................11

*L.W. v. Skrmetti,*
  83 F.4th 460 (6th Cir. 2023) ...............................................................*passim*

*Labrador v. Poe,*
  144 S. Ct. 921 (2024) ..................................................................... 1, 10, 11

*Maryville Baptist Church v. Beshear,*
  957 F.3d 610 (6th Cir. 2020) (per curiam)..........................................18

*N.E. Ohio Coal. for the Homeless v. Husted,*
  831 F.3d 686 (6th Cir. 2016)......................................................................7

*Nat'l Educ. Ass'n-N.H. v. N.H. Att'y Gen.,*
  --- F. Supp. 3d ---, 2025 WL 2807652 (D. N.H. Oct. 2, 2025).........................13

*Printz v. United States,*
  521 U.S. 898 (1997)....................................................................................1

*Roberts v. Neace,*
  958 F.3d 409 (6th Cir. 2020) (per curiam) ........................................................ 18

*Scott v. Donald,*
  165 U.S. 107 (1897) ........................................................................................ 9

*Tabernacle Baptist Church of Nicholasville v. Beshear,*
  459 F. Supp. 3d 847 (E.D. Ky. 2020) .............................................................. 18

*Trump v. CASA,*
  606 U.S. 831 (2025) .................................................................................*passim*

*United States v. Hansen,*
  599 U.S. 76 (2023) ........................................................................................ 15

*United States v. Nat'l Treasury Emps. Union,*
  513 U.S. 454 (1995) ...................................................................................... 17

*United States v. Salerno,*
  481 U.S. 739 (1987) ...................................................................................... 15

*United States v. Sineneng-Smith,*
  590 U.S. 371 (2020) ...................................................................................... 16

*United States v. Skrmetti,*
  605 U.S. 495 (2025) ........................................................................................ 1

*Virginia v. Hicks,*
  539 U.S. 113 (2003) ...................................................................................... 16

*Wright v. Spaulding,*
  939 F.3d 695 (6th Cir. 2019) ........................................................................ 16

## Rules

Fed. R. App. P. 29 ............................................................................................ 1

# INTERESTS OF AMICI CURIAE[1]

The amici States, through their respective attorneys general, regularly go to court to defend their laws against constitutional challenge. In doing so, the amici States are no ordinary litigants, given that our Constitution "contemplates that a State's government will represent and remain accountable to its own citizens." *Printz v. United States*, 521 U.S. 898, 920 (1997). So when the amici States defend their laws, they "assert[] a substantial legal interest that sounds in deeper, constitutional considerations." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022).

It follows that an injunction prohibiting the enforcement of state law "clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018). For this reason, when such an injunction is issued, the amici States endeavor to ensure it is as narrow as possible. *See, e.g.*, *Labrador v. Poe*, 144 S. Ct. 921, 921 (2024); *L.W. v. Skrmetti*, 83 F.4th 460, 489–90 (6th Cir. 2023), *aff'd sub nom. United States v. Skrmetti*, 605 U.S. 495 (2025). Because the decision below granted a universal injunction against the enforcement of Tennessee's law, the

---

[1] The amici States file this brief without leave of the Court or consent of the parties. Fed. R. App. P. 29(a)(2).

amici States have a strong sovereign interest in explaining why the injunction is overbroad.

## INTRODUCTION

Earlier this year, the Supreme Court held that a district court's issuance of a universal injunction "likely exceeds the equitable authority that Congress has granted to the federal courts." *Trump v. CASA*, 606 U.S. 831, 837 (2025). Many States participated as amici curiae in *CASA* to voice concerns about universal injunctions as an equitable remedy. Amicus Brief of Tennessee, at 20–25, *Trump v. CASA*, 606 U.S. 831 (2025) (Nos. 24A884, 24A885, 24A886), 2025 WL 1171767, at *20–25; Amicus Brief of Iowa et al., at 1–2, *Trump v. CASA*, 606 U.S. 831 (2025) (Nos. 24A884, 24A885, 24A886), 2025 WL 1171774, at *1–2. Yet less than a month after *CASA*, the district court here held that States do not benefit from *CASA*'s holding. According to the district court, *CASA* "limits the availability of universal injunctions, not statewide injunctions." Op. & Order, R.81, PageID#1130. If that's right, a district court is free to enjoin enforcement of a state law to the benefit of parties and nonparties alike.

A statewide injunction, however, is every bit a universal injunction. A statewide injunction is universal simply because it applies to anyone who is subject to the State's law. That conclusion is inescapable under *CASA*. As it held, "[t]he

2

difference between a traditional injunction and a universal injunction is not so much *where* it applies, but *whom* it protects: A universal injunction prohibits the Government from enforcing the law against *anyone*, anywhere." *CASA*, 606 U.S. at 837 n.1. In other words, a statewide injunction is universal because it applies to anyone subject to the State's law, party or not. If any doubt remained on that point, *CASA* did not differentiate between statewide injunctions and universal injunctions; in fact, it treated them as one and the same. *See id.* at 840, 843. Plus, *CASA*'s exhaustive historical discussion makes clear that no historical analogue exists for a statewide injunction for the simple reason that it benefits nonparties. *See id.* at 841–47.

*CASA* aside, this Court's precedent is crystal clear that a district court cannot issue a statewide injunction that runs to nonparties. *L.W.*, 83 F.4th at 490; *Commonwealth v. Biden*, 57 F.4th 545, 557 (6th Cir. 2023). And this circuit precedent is grounded in Article III of the Constitution, *L.W.*, 83 F.4th at 490, an issue that *CASA* expressly declined to reach, *CASA*, 606 U.S. at 841 n.4. As a result, regardless of *CASA*, the district court was bound by circuit precedent not to issue an injunction benefiting everyone to whom Tennessee's law applies.

# ARGUMENT

The amici States leave the defense of Tennessee's law to their capable colleagues from the Volunteer State. The amici States file this brief to dispute the district court's holding that a statewide injunction is not a prohibited universal injunction. They offer three points in this regard. First, they explain why the district court's injunction is impermissible under Article III of the Constitution as a matter of circuit precedent. Second, they explain why a statewide injunction is a prohibited universal injunction as a matter of equity under *CASA*. Third, they address the district court's unconvincing reasons for distinguishing *CASA*.

## I. Circuit precedent bound the district court to issue only a party-specific injunction.

In the lead up to *CASA*, several courts of appeals weighed in on the propriety of universal relief. This Court was one of them. Two key cases established this circuit's rule that an injunction that benefits nonparties exceeds the bounds of Article III of the Constitution. That holding remains every bit as binding after *CASA* as it was before, given that *CASA* did not reach the Article III issue on which this Court's universal-injunction rule rests. So the most straightforward way to narrow any injunction here is simply to follow circuit precedent.

The first relevant case from this Court is *Commonwealth v. Biden*. There, three of the four States in this circuit (Kentucky, Tennessee, and Ohio) secured an injunction against federal officials that prohibited the enforcement of an executive order "against any covered contract in the three plaintiff States." 57 F.4th at 550. That is to say, the injunction benefited the plaintiff States *and* many nonparties—any person in the plaintiff States who held a covered contract with the federal government. Although the Court upheld the issuance of the injunction, it narrowed its scope so that it benefited only the parties. *Id.* at 557. The Court held that "affording relief beyond the parties . . . raises substantial questions about federal courts' constitutional and equitable powers." *Id.* To be clear, the Court didn't settle the Article III issue in *Commonwealth v. Biden*. But it made clear that "substantial questions" arise under Article III when a district court issues a statewide injunction that applies to nonparties. *See id.*

The Court built on *Commonwealth v. Biden* in *L.W.* There, across two consolidated cases, the plaintiffs secured statewide injunctions against a Tennessee law and a Kentucky law. The Tennessee injunction prohibited "Tennessee from enforcing its law against the nine challengers *and* against the other seven million residents of the Volunteer State." *L.W.*, 83 F.4th at 490. (That sounds indistinguishable from the injunction issued below.) The Kentucky

injunction prohibited "Kentucky from enforcing its law against seven minors and their parents *and* against the other 4.5 million residents of the Bluegrass State." *Id.* The Court found both statewide injunctions impermissibly overbroad. Key here, *L.W.* based its holding on Article III of the Constitution. *See id.* (noting that "Article III confines the 'judicial power' to 'Cases' and 'Controversies'"). In discussing Article III, *L.W.* held that an injunction "*must* operate in a party-specific and injury-focused manner" and that "[a] court order that goes beyond the injuries of a particular plaintiff to enjoin government action against nonparties *exceeds the norms of judicial power.*" *Id.* (emphasis added). So after *L.W.*, a district court in this circuit exceeds the limits of Article III by issuing a statewide injunction that is not party-specific.

The district court did not address *Commonwealth v. Biden* or *L.W.* other than to note (correctly) "its obligation to award no more [relief] than necessary to remedy plaintiffs' injuries." Op. & Order, R.81, PageID#1129 (citing *Commonwealth v. Biden*, 57 F.4th at 556–57). Rather than grapple with this Court's caselaw, the district court focused on *CASA. Id.* at PageID#1129–31. That was a mistake, albeit an understandable one given the recency and significance of *CASA.* Although *CASA* is no doubt a landmark decision, *CASA* did not free the district court of its obligation to follow circuit precedent on an issue not directly

resolved in *CASA*. Unless an intervening Supreme Court precedent provides reasoning that is "directly applicable" on a previously settled issue, courts in this circuit must follow existing circuit precedent. *N.E. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720–21 (6th Cir. 2016). *CASA* made unmistakably clear that it reserved the Article III question. *CASA*, 606 U.S. at 841 n.4 ("We express no view on the Government's argument that Article III forecloses universal relief."). As a result, the district court remained obligated to follow *Commonwealth v. Biden* and *L.W.* Thus, independent of *CASA*, any injunction here must be narrowed to the parties consistent with Article III of the Constitution.

## II. *CASA* forecloses statewide injunctions that are not party-specific.

Even if *CASA* freed the district court to consider anew whether it could issue a statewide injunction, the district court erred in holding that a statewide injunction is not a universal injunction under *CASA*. A statewide injunction can be nothing other than a universal injunction. Three aspects of *CASA* make this clear.

**A.** First and most simply, *CASA* described universal injunctions in a way that encompasses a statewide injunction like that issued below. *CASA* was careful to describe what counts as a universal injunction. An injunction is not universal because of its geographical scope. In fact, the Court resisted using the term

"nationwide injunction," with the implication being that a universal injunction need not apply throughout the country. *See CASA*, 606 U.S. at 837 n.1. Rather than tie a universal injunction to geography, *CASA* described a universal injunction in terms of the parties to whom it runs. Put more simply, an injunction is universal depending not on *the where* of the injunction, but on *the who*. As *CASA* explained, "[t]he difference between a traditional injunction and a universal injunction is not so much *where* it applies, but *whom* it protects." *Id.* More to the point, "[a] universal injunction prohibits the Government from enforcing the law against *anyone*, anywhere." *Id.*

So framed, the injunction issued below can only be a universal injunction. To quote *CASA*, it prohibits the defendant Tennessee officials from enforcing the challenged law against "*anyone*, anywhere." *See id.* The district court's injunction applies without regard to who the law is enforced against; it applies equally to the plaintiffs and to nonparties who have no idea this suit exists. Judgment, R.84, PageID#1138 ("[D]efendants are enjoined from enforcing Tenn. Code Ann. § 39-15-201(a)'s recruitment provision until otherwise ordered by the court."); *see also* Op. & Order, R.81, PageID#1102 (stating that the court "enjoins enforcement of the recruiting prong of the statute" without limitation). The

injunction here thus falls within the category of universal injunctions prohibited by *CASA*.

**B.** *CASA*'s reliance on several statewide-injunction cases also undermines the district court's holding. In particular, *CASA* did not draw a distinction between universal injunctions and statewide injunctions. Instead, it treated them as indistinguishable.

This is most clearly seen in the Court's discussion of *Scott v. Donald*, 165 U.S. 107 (1897). *CASA* held out *Scott* as reflecting "the approach traditionally taken by federal courts," one that "cuts *against* the existence" of a universal injunction as a permissible equitable remedy. *CASA*, 606 U.S. at 843. At issue in *Scott* was a South Carolina law that state officials used to confiscate alcohol that the plaintiff kept for personal use. *Scott*, 165 U.S. at 109 (statement of the case). The plaintiff sought a statewide injunction—relief that benefited himself and anyone else "whose rights [were] infringed and threatened" by enforcement of the state law. *Id.* at 115 (opinion of the Court). *Scott*, however, refused to grant such all-encompassing relief, instead allowing relief only between "the parties named as plaintiff and defendants in the bill." *Id.* at 117. That is to say, *Scott* refused to grant the very relief ordered here. As *CASA* recounted, *Scott*

demonstrates the Supreme Court's "adhere[nce] to a party-specific view of relief." *CASA*, 606 U.S. at 843 n.6.

*CASA*'s reliance on *Scott* devastates the district court's attempt to differentiate statewide injunctions from universal injunctions. If the district court were right to draw such a line, *CASA* wouldn't have cited *Scott* in support of its universal-injunction holding. In *CASA*, however, it made no difference that the *Scott* plaintiff sought a statewide injunction. What mattered was that the *Scott* Court granted only party-specific relief. *Id.* at 843 & n.6. *CASA*'s reliance on *Scott* therefore refutes the district court's holding that *CASA* "limits the availability of universal injunctions, not statewide injunctions." Op. & Order, R.81, PageID#1130. *Scott* teaches that a party who requests a statewide injunction in fact seeks prohibited universal relief.

*Scott* was not the only statewide-injunction case that *CASA* cited. At the top of its decision, the Court listed several separate writings in which some Justices have "repeatedly emphasized" the need to decide whether federal courts have "the authority to universally enjoin the enforcement of an executive or legislative policy." *CASA*, 606 U.S. at 839–40. Two of those separate writings involved statewide injunctions. *Id.* at 840 (citing *Labrador*, 144 S. Ct. at 921 (Gorsuch, J., joined by Thomas and Alito, JJ., concurring in grant of stay); *Griffin*

*v. HM Florida-ORL*, 144 S. Ct. 1, 2 (2023) (statement of Kavanaugh, J., joined by Barrett, J., except as to footnote 1, respecting denial of application for stay)). This is further proof that *CASA* did not distinguish between universal injunctions and statewide injunctions.

In fact, in *Labrador*, the Supreme Court took the extraordinary step of staying a statewide injunction, as relevant here, to the extent it benefited nonparties. 144 S. Ct. at 921 (staying an injunction against state law "except as to the provision to the plaintiffs of the treatments they sought below"). Stated differently, the Court in *Labrador* narrowed a statewide injunction that is analogous to the injunction here. In explaining this grant of relief, three Justices deemed it a "welcome development" that the Court stayed an injunction "to the extent it applies to nonparties, which is to say *to the extent it provides 'universal' relief.*" *Id.* (emphasis added) (Gorsuch, J., joined by Thomas and Alito, JJ., concurring in grant of stay). These three Justices (all of whom were in the *CASA* majority) thus made explicit their view that a statewide injunction is in fact a universal injunction if it "applies to nonparties." *Id.* And two other Justices (who were also in the *CASA* majority) recognized that both "nationwide and statewide injunctions" "prevent enforcement of a law against persons other than the plaintiffs." *Id.* at 931 (Kavanaugh, J., joined by Barrett, J., concurring in grant of stay).

**C.** One final aspect of *CASA* bears emphasis—in particular, its determination that no historical analogue exists for an injunction that benefits nonparties. *CASA* instructs that deciding whether federal courts can grant a particular remedy requires asking whether the remedy is "sufficiently analogous to the relief issued by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act." *CASA*, 606 U.S. at 841–42 (cleaned up). After surveying the relevant history, *CASA* concluded that "[n]othing like a universal injunction was available at the founding, or for that matter, for more than a century thereafter." *Id.* at 856.

Despite *CASA*'s history-focused standard, the district court made no effort to identify instances at the relevant time of England's high court granting relief analogous to the statewide injunction issued below. Op. & Order, R.81, PageID#1129–31. The reason why is obvious. *CASA*'s exhaustive historical discussion forecloses any contention that the equivalent of a statewide injunction benefiting nonparties was used. As *CASA* carefully documented, "the Chancellor's remedies were . . . typically party specific," including in particular the remedy of an injunction. *CASA*, 606 U.S. at 842. So the district court provided no historical evidence of nonparty injunctions from the relevant period because, as *CASA* held, no such evidence exists.

The district court also failed to discuss any founding-era federal decision that issued the equivalent of a statewide injunction. Op. & Order, R.81, PageID#1129–31. Here again, *CASA* explains why. It's because "founding-era courts" did not "chart a different course" from England's high court on the issue of universal relief. *CASA*, 606 U.S. at 843. As outlined above, *Scott* is illustrative of this point. *Id.* at 843 & n.6. And following *Scott*, the Supreme Court "consistently rebuffed requests for relief that extended beyond the parties." *Id.* at 843–44 (collecting cases). In short, the district court offered no founding-era caselaw support for its statewide-injunction holding for the simple reason that *CASA* tells us no supporting caselaw exists.

***

For all these reasons, the district court was profoundly wrong to read *CASA* to differentiate statewide injunctions from universal injunctions. As another district court just held, a statewide injunction is just "a universal injunction by another name." *Nat'l Educ. Ass'n-N.H. v. N.H. Att'y Gen.*, --- F. Supp. 3d ---, 2025 WL 2807652, at *26 (D. N.H. Oct. 2, 2025). *CASA* can be read no other way.

## III. The district court's reasons for distinguishing *CASA* fail.

The district court offered three reasons for distinguishing *CASA*. None stands up to scrutiny.

**A.** The district court first reasoned that the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123 (1908), "appears" to provide "more historical support" for issuing a statewide injunction. Op. & Order, R.81, PageID#1130. According to the district court, *CASA* "explicitly recognized the validity of equitable relief under *Ex parte Young*—the precise relief plaintiffs seek here—based on 'a long line of cases authorizing suits against state officials in certain circumstances.'" *Id.* (quoting *CASA*, 606 U.S. at 846 n.9).

That conclusion elevates the principal dissent from *CASA* above the Court's holding. Justice Sotomayor's dissent viewed *Ex parte Young* much like the district court did. *CASA*, 606 U.S. at 907 (Sotomayor, J., dissenting) (citing *Ex parte Young* to argue that equitable relief can "evolve[] . . . to protect rights and redress wrongs"). But the *CASA* majority expressly rejected this take on *Ex parte Young*. And it did so twice. It noted that "[e]ven during the deluge of constitutional litigation that occurred in the wake of *Ex parte Young*, . . . universal injunctions were nowhere to be found." *Id.* at 846 (cleaned up). This passage refutes the district court's determination that merely seeking relief under *Ex parte Young* puts

universal relief on the table. And if that part of *CASA* were not clear enough, the Court continued in a footnote that "*Ex parte Young* does not say—either explicitly or implicitly—that courts may devise novel remedies that have no background in traditional equitable practice." *Id.* at 847 n.9. In short, *Ex parte Young* is no license to write around *CASA*'s rule.

**B.** Second, the district court discounted *CASA* because the plaintiffs here brought a First Amendment overbreadth claim. Op. & Order, R.81, PageID#1129–30. But that view conflates the merits of an overbreadth claim with the remedy for an overbreadth violation. It is true that the merits of an overbreadth claim require a court to consider the circumstances of nonparties. *See United States v. Hansen*, 599 U.S. 762, 769 (2023). But the same is true of facial claims more generally. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). And the remedy for a claim that a law is facially unconstitutional must be party-specific. *See L.W.*, 83 F.4th 489–90 (stating that the plaintiffs brought facial claims and still requiring a party-specific remedy). The same holds for an overbreadth claim. A court that finds an overbreadth violation must still grant relief within the confines of Article III and equity.

Taking each in turn, as a matter of circuit precedent interpreting Article III, a district court cannot grant a universal injunction against state law that benefits

nonparties. *Id.* at 490. This limitation on the judicial power is not claim-specific. *See id.* (holding without limitation that a universal injunction "exceeds the norms of judicial power"). The same result follows under *CASA*. As *CASA* recognized, "[n]othing like a universal injunction was available at the founding, or for that matter, for more than a century thereafter." *CASA*, 606 U.S. at 856. So regardless of the particular claim at issue, there is no history of universal relief. And of course, there could no deeply rooted history of granting universal relief for overbreadth claims, given that the overbreadth doctrine did not "emerge[] [until] the mid-20th century." *See United States v. Sineneng-Smith*, 590 U.S. 371, 383 (2020) (Thomas, J., concurring).

The district court sidestepped these points primarily by relying on *Virginia v. Hicks* and its statement that overbreadth "invalidate[s] *all* enforcement of that law." 539 U.S. 113, 119 (2003). But this language is the definition of dicta, given that no overbreadth violation occurred in *Hicks* and thus no injunction issued. *See id.* at 121–24; *accord Wright v. Spaulding*, 939 F.3d 695, 700–02 (6th Cir. 2019) (explaining how "to separate holdings from dicta"). Rather than rely on *Hicks*'s dicta, the district court should've considered caselaw in which the Supreme Court in fact passed on the scope of an injunction in the overbreadth context. Take *Doran v. Salem Inn*, 422 U.S. 922 (1975), which *CASA* held out for its conclusion

16

regarding party-specific relief. *CASA*, 606 U.S. at 844. There, in finding a likely violation of the overbreadth doctrine, the Supreme Court held that "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute." *Doran*, 422 U.S. at 931, 933–34; *accord United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 477–78 (1995) (narrowing an injunction issued for a First Amendment violation to be party-specific).

**C.** Third, the district court distinguished *CASA* because the "many '[p]ractical problems' created by universal[] injunctions simply do not arise when a federal court issues statewide injunctive relief." Op. & Order, R.81, PageID#1131 (citation omitted). It is true that *CASA* discussed the practical problems with universal relief and noted that "there are arguments on both sides." *CASA*, 606 U.S. at 856. But *CASA* did *not* resolve this policy debate. It instead held that "as with most questions of law, the policy pros and cons are beside the point." *Id.* So the district court was wrong to rely on policy concerns that, per *CASA*, are "beside the point."

In any event, the district court was mistaken to say that "[n]one" of these practical problems can arise with statewide injunctions. Op. & Order, R.81,

PageID#1131. By way of example, just like the federal government, the amici States regularly face competing lawsuits challenging the same law or executive action. For example, during the COVID-19 crisis, Kentucky's Governor faced numerous lawsuits challenging the same executive order. *See Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020) (per curiam); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020) (per curiam); *Tabernacle Baptist Church of Nicholasville v. Beshear*, 459 F. Supp. 3d 847 (E.D. Ky. 2020). And the Commonwealth is currently litigating the propriety of nonparty injunctive relief in its state high court in now-consolidated appeals in which two trial courts granted competing universal injunctions enjoining enforcement of the same state law. *Commonwealth ex rel. Coleman v. Ky. Educ. Ass'n*, 2025 WL 728078, at *13 (Ky. App. Mar. 7, 2025) ("The circuit courts enjoined SB 7 without specifying who was enjoined."), *discretionary review granted* Nos. 2025-SC-0135, 2025-SC-0137 (Ky.). As these non-exhaustive examples from only Kentucky illustrate, the amici States are not immune from the practical problems caused by universal relief.

## CONCLUSION

For these reasons, if the Court finds Tennessee's law unconstitutional, it should limit any injunctive relief to only the parties.

Respectfully submitted by,

<u>*s/ Matthew F. Kuhn*</u>
Russell Coleman
 *Attorney General*
Matthew F. Kuhn
 *Solicitor General*
John H. Heyburn
 *Principal Deputy Solicitor General*
Caleb B. Childers
 *Assistant Solicitor General*

Office of the Kentucky
Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Jack.Heyburn@ky.gov
Caleb.Childers@ky.gov

*Counsel for Amici States*

# ADDITIONAL COUNSEL

Steve Marshall
Attorney General of Alabama

Stephen J. Cox
Attorney General of Alaska

Tim Griffin
Attorney General of Arkansas

James Uthmeier
Attorney General of Florida

Chris Carr
Attorney General of Georgia

Raúl R. Labrador
Attorney General of Idaho

Theodore E. Rokita
Attorney General of Indiana

Brenna Bird
Attorney General of Iowa

Kris Kobach
Attorney General of Kansas

Liz Murrill
Attorney General of Louisiana

Lynn Fitch
Attorney General of Mississippi

Catherine Hanaway
Attorney General of Missouri

Michael T. Hilgers
Attorney General of Nebraska

Drew Wrigley
Attorney General of North Dakota

Dave Yost
Attorney General of Ohio

Alan Wilson
Attorney General of South Carolina

Ken Paxton
Attorney General of Texas

John B. McCuskey
Attorney General of West Virginia

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation in Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 3,926 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 15-point Garamond font using Microsoft Word.

*s/ Matthew F. Kuhn*

**CERTIFICATE OF SERVICE**

I certify that on November 20, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Matthew F. Kuhn*