# In the United States Court of Appeals for the Sixth Circuit

RACHEL WELTY; AFTYN BEHN,

*Plaintiffs-Appellees*
*and Cross-Appellants,*

v.

BRYANT C. DUNAWAY; JASON LAWSON; JENNINGS HUTSON JONES;
ROBERT J. CARTER; RAY WHITLEY; ROBERT J. NASH; GLENN R. FUNK;
STACEY EDMONSON; BRENT COOPER; RAY CROUCH; HANS
SCHWENDIMANN,

*Defendants-Appellants*
*and Cross-Appellees,*

On Appeal from the United States District Court
for the Middle District of Tennessee
Case No. 3:24-cv-00768

## BRIEF OF AMICUS CURIAE THOMAS MORE SOCIETY IN SUPPORT OF APPELLANTS

THOMAS BREJCHA
PETER BREEN
B. TYLER BROOKS
Thomas More Society
309 West Washington Street
Suite 1250
Chicago, Illinois 60606
(312) 782-1680 (phone)

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Table of contents ..................................................................................... i

Table of authorities ................................................................................ ii

Interest of amicus curiae ...................................................................... iv

Argument ................................................................................................ 7

I.    The First Amendment allows Tennessee to punish Welty and Behn's abortion-assistance activities as speech incident to unlawful conduct .................................................................... 7

    A.    Welty and Behn's speech is integral to the unlawful acts of recruitment, harboring, or transportation defined in section 39-15-201 of the Tennessee Code ................................... 8

    B.    Welty and Behn's speech that facilitates the acquisition of abortion pills is integral to the criminal conduct defined in 18 U.S.C. §§ 1461-1462 ........................................... 11

    C.    Welty and Behn's speech that facilitates self-managed abortions is integral to the criminal conduct defined in Tennessee's abortion ban ...................................................... 12

II.    The district court should not have considered or awarded an overbreadth remedy when as-applied relief will fully redress the plaintiffs' alleged injury .................................................... 16

III.    The plaintiffs were required to prove a "lopsided ratio" when comparing the unconstitutional and constitutional applications of section 39-15-201(a)'s "recruitment" prong ................................. 18

IV.    The district court improperly awarded a universal remedy ............... 21

V.    The district court's judgment will not protect those who violate section 39-15-201(a) if the judgment is eventually narrowed or vacated ...................................................................................... 24

Conclusion ............................................................................................ 27

Certificate of compliance ..................................................................... 28

Certificate of service ............................................................................ 29

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Biden*, 40 F.4th 375 (6th Cir. 2022) ................................. 24, 26

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) ............................. 10

*Board of Trustees of State University of New York v. Fox*,
  492 U.S. 469 (1989) ....................................................... 16

*Califano v. Yamasaki*, 442 U. S. 682 (1979) .......................................17, 22

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) ................................... 22

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ........................................ 25, 26

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) ..................... 4, 9

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ........................................ 17

*Hicks v. United States*, 150 U.S. 442 (1893) ...................................... 10

*K.C. v. Individual Members of Medical Licensing Board of Indiana*,
  121 F.4th 604 (7th Cir. 2024) ............................................... 3, 9

*Lake v. HealthAlliance Hospital Broadway Campus*,
  738 F. Supp. 3d 208 (N.D.N.Y. 2024) ...................................... 25, 26

*Roe v. Wade*, 410 U.S. 113 (1973) ................................................11

*Trump v. CASA, Inc.*, 606 U.S. 831 2025) ........................................ 22, 23

*United States v. Hansen*, 599 U.S. 762 (2023) ................................. passim

*United States v. National Treasury Employees Union*, 513 U.S. 454 (1995) ............... 24

*Village of Schaumburg v. Citizens for a Better Environment*,
  444 U.S. 620 (1980) ....................................................... 16

*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021) ..................... 25

**Statutes**

18 U.S.C. §§ 1461-1462 ....................................................... 5, 7, 11, 20

Tenn. Code § 39-11-402 ....................................................... 6, 14, 20

Tenn. Code § 39-11-402(2) .................................................... 6, 20

Tenn. Code § 39-11-407 ................................................................ 6, 14, 20

Tenn. Code § 39-12-102 .................................................................... 15

Tenn. Code § 39-12-105(a) ............................................................. 15, 20

Tenn. Code § 39-15-201(a) ............................................................ 1, 7, 19

Tenn. Code § 39-15-213 ................................................................ 6, 8, 20

Tenn. Code § 39-15-213(b)-(c) ....................................................... 12, 13, 20

Tenn. Code § 39-15-213(e) ............................................................. 12, 13

**Other Authorities**

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*,
104 Va. L. Rev. 933 (2018) .............................................................. 26

Anita Waldman, Tennessee appeals judge's decision to block law
making it a crime to help minors get an abortion, Tennessee
Lookout (Sept. 4, 2025) .................................................................. 25

## INTEREST OF AMICUS CURIAE

Amicus curiae Thomas More Society is a non-profit, national public-interest law firm dedicated to restoring respect in law for life, family, and religious liberty. The Thomas More Society provides legal services to clients free of charge and often represents individuals who cannot afford a legal defense with their own resources. The Thomas More Society relies entirely on donor support to provide its services.

Rachel Welty and Aftyn Behn help minors in Tennessee kill their unborn children by encouraging them to travel to jurisdictions where abortion remains legal. *See* Opinion, R.81, PageID#1104-1105. These are criminal acts under Tennessee law. *See* Tenn. Code § 39-15-201(a) (imposing criminal liability on any adult who "intentionally recruits, harbors, or transports a pregnant unemancipated minor within this state for the purpose of" obtaining an abortion that would be illegal if performed in Tennessee).

Yet the district court held that the First Amendment allows Welty and Behn to "recruit" pregnant minors in Tennessee and counsel them on how to abort their unborn children—so long as the unborn child is killed in another state where abortion is still allowed. *See* Opinion, R.81, PageID#1111. The district court acknowledged that Tennessee may constitutionally outlaw speech integral to unlawful conduct,[1] and that Tennessee may therefore prohibit speech that aids or abets *illegal* abortions that occur within Tennessee or other jurisdictions. *See id.* But the district court held that speech that helps Tennessee residents obtain *legal* abortions in *other* states can never qualify as "speech integral to unlawful conduct"—even though Tennessee has explicitly outlawed conduct that "recruits, harbors, or transports" minors in Tennessee for the purpose of obtaining legal abortions elsewhere, and even though Welty and Behn's speech is indisputably integral to those criminal

---

1. Opinion, R.81, PageID#1111 ("The First Amendment does not protect '[s]peech intended to bring about a particular unlawful act.' *United States v. Hansen*, 599 U.S. 762, 783 (2023); *United States v. Williams*, 553 U.S. 285, 297 (2008).").

acts of recruitment, harboring, and transportation. *See* Opinion, R.81, Page-ID#1127 ("[S]peech incident to an act of harboring or transporting a Tennessee minor to obtain a *legal* abortion … is protected speech").

The district court's judgment should be reversed. It is perfectly constitutional for a state to criminalize conduct within its borders that encourages or seduces its residents to engage in harmful but legal behaviors—and to outlaw speech that is integral to those criminal acts of encouragement or seduction. A state may, for example, criminalize the assistance of suicide, even though suicide itself is not a crime. And a state may punish speech within its borders that encourages or provides instructions on how to commit suicide, even though the underlying act of suicide remains legal. The First Amendment allows a state to punish this speech because the speech is integral to the unlawful act of *assisting* (or attempting to assist) a suicide—and that remains the case regardless of whether or where the suicide happens and regardless of the law of the jurisdiction in which the suicide occurs. The criminal act is not the suicide, but the criminal acts of *assistance* (or attempted assistance) that the state has defined and outlawed. And the speech-integral-to-unlawful-conduct doctrine is fully applicable to speech activities of that sort.

The same goes for laws that protect minors from being trafficked to states with lower age-of-consent laws. In Tennessee, the age of consent is 18; in most of its neighboring states (including North Carolina, South Carolina, Georgia, Alabama, Mississippi, and Arkansas) the age of consent is 16. If Ghislaine Maxwell came to Tennessee to recruit 16 and 17 year olds to have

sex with Jeffrey Epstein in those neighboring states, the Constitution would allow Tennessee to respond by criminalizing conduct in Tennessee that "recruits, harbors, or transports" a minor for the purpose of facilitating sexual encounters that would constitute statutory rape if performed in Tennessee. The First Amendment would also allow Tennessee to punish speech that "recruits" minors for this purpose as speech integral to unlawful conduct— even if the eventual sexual encounters remain legal in the states where they occur. Here, too, the relevant "unlawful conduct" is the recruitment, harboring, or transportation of minors for the purpose of sex trafficking, rather than the sex that (lawfully) occurs in neighboring states with lower age-of-consent laws.

States may also prohibit the referral of minors for gender-transitioning procedures—and they may enforce these laws against speech within their borders that refers minors to providers in other states that allow the gender transitioning of a child. *See K.C. v. Individual Members of Medical Licensing Board of Indiana*, 121 F.4th 604, 630-31 (7th Cir. 2024) (holding that an Indiana statute criminalizing referrals of minors for gender-transitioning procedures restricted "speech integral to unlawful conduct," even as applied to referrals to providers in other states where the gender transitioning of a child remains legal). The First Amendment does not protect this type of speech because it is integral to unlawful conduct—with the "unlawful conduct" being the acts of assistance or encouragement, not the gender-transitioning procedures that take place in a state that allows them. *See id.*

So Welty and Behn are committing criminal acts in Tennessee by helping minors leave the state to kill their unborn children, even if the abortion itself remains legally permitted in the jurisdiction where it occurs. And Tennessee has every prerogative to outlaw conduct taken within its borders that causes or leads to harm to its residents (including unborn residents), even if the laws of another state allow others to inflict or participate in that harm. That Welty and Behn use the spoken word to help others kill Tennessee's unborn children does nothing to immunize their behavior from criminal prosecution. *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) ("[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."). They are no different from a person who counsels Tennessee's minors to leave the state to commit suicide, undergo a sex-change operation, or have sex with Jeffrey Epstein (or other sexual predators) in jurisdictions where these behaviors are legally allowed. The district court erred by failing to recognize or even consider that the plaintiffs' speech can be constitutionally proscribed as integral to the unlawful acts of recruitment, harboring, and transportation described in Tenn. Code § 39-15-201. And this Court should reverse the district court on that basis.

The district court further erred by failing to recognize that Welty and Behn's speech encouraging minors to obtain abortion pills and conduct self-managed abortions can be constitutionally proscribed as speech integral to

unlawful conduct. *See* Tr. of Prelim. Inj. Hearing, R.35, PageID#364 (14:10-12), PageID#365 (15:14-16), PageID#366 (16:3-10), PageID#375 (25:1-2) (Welty admitting that she provides information to minors on how to obtain abortion pills), Page ID#369 (19:16-18) ( "I posted a lot of information about abortion pills and their safety and where they can be accessed."); *id.* at Page-ID#391 (41:20-42:2), PageID#392 (42:17-22) (Behn admitting that she provides information on how to perform self-managed abortions). It is a federal crime to use the mails for the mailing, carriage, or delivery of abortion pills, or to knowingly take or receive abortion pills from any express company, common carrier, or interactive computer service. *See* 18 U.S.C. §§ 1461-1462. Welty and Behn's speech encourages and solicits Tennessee residents to violate 18 U.S.C. §§ 1461-1462 by arranging for the delivery of abortion pills through the mail, and by taking and receiving abortion pills from an express company, common carrier, or interactive computer service. Welty and Behn's speech also aids or abets these crimes by providing information on how to violate this federal statutory prohibition. *See United States v. Hansen*, 599 U.S. 762, 771 (2023) ("Facilitation—also called aiding and abetting—is the provision of assistance to a wrongdoer with the intent to further an offense's commission."); *see also id.* (explaining the distinction between "solicitation" and "aiding or abetting").

Welty and Behn are also violating Tennessee's criminal abortion ban by encouraging minors in Tennessee to obtain self-managed abortions. Although a woman cannot be criminally prosecuted for self-managing her own abor-

tion,[2] it is *still* a state-law crime for Welty and Behn (or anyone else) to facilitate, solicit, or attempt to facilitate another person's self-managed abortion. *See* Tenn. Code § 39-15-213 (criminalizing all abortions apart from those performed by a licensed physician, while exempting "the pregnant woman upon whom an abortion is performed or attempted" from "criminal conviction or penalty"); *see also* Tenn. Code § 39-11-402(2) (imposing accomplice liability on anyone who "solicits, directs, aids, or attempts to aid another person" who performs a crime, including a self-managed abortion); Tenn. Code § 39-11-407 ("In a prosecution in which a person's criminal responsibility is based upon the conduct of another, the person may be convicted on proof of commission of the offense and that the person was a party to or facilitated its commission, and it is no defense that … (1) The other belongs to a class of persons who by definition of the offense is legally incapable of committing the offense in an individual capacity").

The district court acknowledged that Welty aids or abets self-managed abortions in Tennessee,[3] yet it appeared to believe that Tennessee law gives Welty and Behn a free pass to facilitate these illegal abortions solely because the pregnant woman who self-manages the abortion is immune from criminal liability. That is not the law, and it is astounding that the district court would

---

2. *See* Tenn. Code § 39-15-213(e) ("This section does not subject the pregnant woman upon whom an abortion is performed or attempted to criminal conviction or penalty.")

3. Opinion, R.81, PageID#1110.

assume that the pregnant woman's immunity from criminal prosecution can somehow shield individuals like Welty and Behn who solicit, facilitate, and encourage self-managed abortions in Tennessee. Welty and Behn are committing criminal acts under Tennessee law by aiding or abetting self-managed abortions in the state, and the state may constitutionally proscribe any speech that is integral to this criminal conduct.

## ARGUMENT

### I. THE FIRST AMENDMENT ALLOWS TENNESSEE TO PUNISH WELTY AND BEHN'S ABORTION-ASSISTANCE ACTIVITIES AS SPEECH INCIDENT TO UNLAWFUL CONDUCT

The district court failed to recognize that the plaintiffs' speech is integral to no fewer than three separate and distinct categories of unlawful conduct. The first is the state-law crime of recruiting, harboring, or transporting a pregnant unemancipated minor in Tennessee for the purpose of obtaining an abortion that would be illegal if performed in Tennessee. *See* Tenn. Code § 39-15-201(a). The second consists of the federal-law crimes defined in the Comstock Act, which imposes federal criminal liability on anyone who uses the mails for the mailing, carriage in the mails, or delivery of abortion pills, or who knowingly takes or receives abortion pills from any express company, common carrier, or interactive computer service. *See* 18 U.S.C. §§ 1461-1462. And the third involves the conduct outlawed by Tennessee's criminal abortion ban, which imposes criminal liability on those who aid or abet another person's self-managed abortion, even though it shields the pregnant woman

who aborts from criminal prosecution or punishment. *See* Tenn. Code § 39-15-213.

### A. Welty and Behn's Speech Is Integral To The Unlawful Acts Of Recruitment, Harboring, or Transportation Defined In Section 39-15-201 of the Tennessee Code

The district court's fundamental error was in assuming that the speech-integral-to-unlawful-conduct doctrine is inapplicable to speech that helps Tennessee residents obtain legal abortions in other states. *See* Opinion, R.81, PageID#1127 ("[S]peech incident to an act of harboring or transporting a Tennessee minor to obtain a *legal* abortion ... is protected speech"). That is a non sequitur. The out-of-state abortion is not the "unlawful conduct" pertinent to the *Giboney* inquiry. The "unlawful conduct" instead consists of the recruitment, harboring, or transportation of minors defined and outlawed by section 39-15-201. Welty and Behn's abortion-assistance activities are assuredly integral to those criminal acts, and the district court correctly recognized that the plaintiffs' abortion counseling falls squarely within the prohibition in section 39-15-201. *See* Opinion, R.81, PageID#1115 ("Under either proposed interpretation of 'recruit,' plaintiffs' abortion-related advocacy and counseling would be proscribed by the recruitment provision."). It follows that the plaintiffs' abortion counseling qualifies as speech integral to the unlawful conduct defined in section 39-15-201. And the First Amendment does not allow the plaintiffs to immunize themselves from prosecution merely because they have used the spoken or written word to effectuate a criminal act.

*See Giboney*, 336 U.S. at 502 ("[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."); *United States v. Hansen*, 599 U.S. 762, 783 (2023) (same).

Of course, one must be careful not to carry the *Giboney* principle too far. Before invoking *Giboney*, a court must assure itself that the state is punishing speech pursuant to a legitimate criminal prohibition, rather than a ruse to suppress constitutionally protected speech. A state could not, for example, establish a "crime" that outlaws "conduct that undermines confidence in the government" and then use *Giboney* to punish speech that criticizes government officials. But there is no question that Tennessee has a legitimate interest in outlawing conduct within its borders that causes or leads to harm to its residents—even if the harm winds up occurring in another state, and even if the ultimate act that inflicts the harm is not itself illegal. No one would deny that Tennessee may outlaw behavior that facilitates or encourages its minors to travel to other states to commit suicide, to undergo sex-change operations,[4] or to have sex with Jeffrey Epstein (or other sexual predators) in jurisdictions where age of consent is below 18. Tennessee may likewise criminalize behavior within its borders that harms its unborn residents by facilitating or encouraging minors to leave the state for abortions.

---

4.    *See K.C.*, 121 F.4th at 630-31.

Courts must also ensure that the punished speech falls within the established categories of soliciting, aiding or abetting, or attempting to commit the prohibited crimes. *See United States v. Hansen*, 599 U.S. 762, 771 (2023) (defining and distinguishing solicitation and facilitation). A state cannot punish speech merely because it might have the tendency to encourage unlawful activity, absent an intent to bring about or assist a particular criminal act. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it"); *Hansen*, 599 U.S. at 771 (noting that solicitation and facilitation "require an intent to bring about a particular unlawful act"); *see also Hicks v. United States*, 150 U.S. 442, 449 (1893) ("[W]ords of encouragement and abetting must" be used with "the intention as respects the effect to be produced"). But no one in this case is denying that Welty and Behn's speech intends to bring about the recruitment, harboring, or transportation of minors in Tennessee for the purpose of obtaining abortions that would be illegal if performed in Tennessee, and Welty and Behn have admitted as much in their testimony. *See* Tr. of Prelim. Inj. Hearing, R.35, PageID#381 (31:7-21) (Welty); PageID#395 (45:5-22) (Behn). So Welty and Behn's speech is integral to the crimes of recruitment, harboring, or transportation defined in section 39-15-201, and it is not protected by the First Amendment.

**B.** **Welty and Behn's Speech That Facilitates The Acquisition Of Abortion Pills Is Integral To The Criminal Conduct Defined In 18 U.S.C. §§ 1461-1462**

Welty and Behn do more than merely help minors in Tennessee obtain out-of-state abortions. They also counsel minors on how to obtain abortion pills over the internet so they can perform self-managed abortions in Tennessee. *See* Tr. of Prelim. Inj. Hearing, R.35, PageID#364 (14:10-12), PageID#365 (15:14-16), PageID#366 (16:3-10), PageID#375 (25:1-2) (Welty admitting that she provides information to minors on how to obtain abortion pills), PageID#369 (19:16-18) ("I posted a lot of information about abortion pills and their safety and where they can be accessed."); *id.* at PageID#391 (41:20-42:2), PageID#392 (42:17-22) (Behn admitting that she provides information on how to perform a self-managed abortion). In doing so Welty and Behn are soliciting and facilitating violations of the federal Comstock Act, which imposes felony criminal liability on any person who uses the mails for the mailing, carriage, or delivery of abortion pills, or who knowingly takes or receives abortion pills from any express company, common carrier, or interactive computer service. *See* 18 U.S.C. §§ 1461-1462. Tennessee may therefore punish this speech under section 39-15-201(a) as speech integral to criminal conduct.

The district court did not even acknowledge the existence of the federal Comstock Act, which continues to outlaw the shipment and receipt of abortion pills and is fully enforceable now that *Roe v. Wade*, 410 U.S. 113 (1973), has been overruled. Yet Tennessee has every prerogative to use section 39-15-

201(a) to punish speech integral to federal crimes, regardless of whether Tennessee has an independent state-law prohibition on the criminal conduct defined in the Comstock Act, because speech that solicits, facilitates, or attempts to facilitate federal crimes is categorically unprotected under the First Amendment and is punishable at any level of government. *See United States v. Hansen*, 599 U.S. 762, 783 (2023) ("Speech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected."). And the district court's overbreadth analysis needed to consider the extent to which section 39-15-201(a)'s "recruitment" prohibition encompasses speech prohibited by the Comstock Act. *See* pp. 18-20, *infra*.

## C. Welty and Behn's Speech That Facilitates Self-Managed Abortions Is Integral To The Criminal Conduct Defined In Tennessee's Abortion Ban

Welty and Behn's speech also violates Tennessee's criminal abortion ban to the extent it solicits or facilitates self-managed abortions (or attempted self-managed abortions) in Tennessee. Tennessee's abortion ban imposes criminal liability on anyone who performs or attempts to perform an abortion that is not performed by a licensed physician. *See* Tenn. Code § 39-15-213(b)-(c). And although Tennessee law shields the pregnant woman who obtains or seeks an abortion from criminal conviction or penalty,[5] this carveout does *not* protect individuals who aid or abet a self-managed abortion from criminal li-

---

5. *See* Tenn. Code § 39-15-213(e) ("This section does not subject the pregnant woman upon whom an abortion is performed or attempted to criminal conviction or penalty.").

ability. Self-managed abortion remains illegal in Tennessee, even though the woman who aborts cannot be convicted or punished, and any other person who solicits or assists a self-managed abortion in Tennessee is guilty of violating the criminal abortion ban in section 39-15-213.

The district court and the plaintiffs seem to think that if the pregnant woman who self-aborts is immune from criminal prosecution, then her immunity somehow carries over to those who solicit or facilitate a self-managed abortion in Tennessee. That is not the case. Self-managed abortion is *still* a criminal offense under section 39-15-213, even though the pregnant woman who self-aborts cannot be prosecuted for this crime. *See* Tenn. Code § 39-15-213(b)-(c) (criminalizing all abortions apart from those performed by a licensed physician); Tenn. Code § 39-15-213(e) ("This section does not subject the pregnant woman upon whom an abortion is performed or attempted to criminal conviction or penalty."). And that means that any person apart from the pregnant woman who solicits or assists a self-managed abortion has committed a criminal act and can be prosecuted, even though the pregnant woman who self-aborts retains her immunity from conviction or penalty.

Tennessee's accomplice-liability statute makes clear that those who counsel or advise women to obtain self-managed abortions are criminally responsible for any illegal abortion that results:

> A person is criminally responsible for an offense committed by the conduct of another, if: …
>
> (2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the of-

fense, the person solicits, directs, aids, or attempts to aid another person to commit the offense;

Tenn. Code § 39-11-402. And Tennessee law insists that facilitators of self-managed abortions remain criminally liable despite the pregnant woman's immunity from prosecution:

> In a prosecution in which a person's criminal responsibility is based upon the conduct of another, the person may be convicted on proof of commission of the offense and that the person was a party to or facilitated its commission, and it is no defense that:
>
> (1) The other belongs to a class of persons who by definition of the offense is legally incapable of committing the offense in an individual capacity; or
>
> (2) The person for whose conduct the defendant is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or different type or class of offense, or is immune from prosecution.

Tenn. Code § 39-11-407.

Tennessee's solicitation statute also imposes criminal liability on speech that solicits a pregnant woman to obtain a self-managed abortion, even though the pregnant woman who was solicited cannot be prosecuted for the crime:

> (a) Whoever, by means of oral, written or electronic communication, directly or through another, intentionally commands, requests or hires another to commit a criminal offense, or attempts to command, request or hire another to commit a criminal offense, with the intent that the criminal offense be committed, is guilty of the offense of solicitation.
>
> (b) It is no defense that the solicitation was unsuccessful and the offense solicited was not committed. It is no defense that the person solicited could not be guilty of the offense solicited, due

to insanity, minority, or other lack of criminal responsibility or incapacity. It is no defense that the person solicited was unaware of the criminal nature of the conduct solicited. It is no defense that the person solicited is unable to commit the offense solicited because of the lack of capacity, status, or characteristic needed to commit the offense solicited, so long as the person soliciting or the person solicited believes that either or both have such capacity, status, or characteristic.

Tenn. Code § 39-12-102; *see also* Tenn. Code § 39-12-105(a) ("[I]t is immaterial to the liability of a person who solicits another to commit an offense that: … (2) The one whom the person solicits is not legally responsible or has an immunity to prosecution or conviction for the commission of the offense."). So Welty and Behn, by counseling pregnant minors to self-abort in violation of section 39-15-213, are soliciting the crime of abortion—and their speech can be punished as speech integral to unlawful criminal conduct. And the state of Tennessee may enforce section 39-15-201(a)'s "recruitment" prohibition against any speech of Welty and Behn that solicits or facilitates self-managed abortions in Tennessee.

\* \* \*

The Court should hold that all of the "recruitment" speech that Welty and Behn claim is constitutionally protected is speech integral to unlawful conduct, and it should dismiss their First Amendment claims on that basis alone. But if the Court disagrees and concludes that some or all of Welty or Behn's speech is protected by the First Amendment, it should still reject the district court's overbreadth remedy and its universal injunction.

## II. THE DISTRICT COURT SHOULD NOT HAVE CONSIDERED OR AWARDED AN OVERBREADTH REMEDY WHEN AS-APPLIED RELIEF WILL FULLY REDRESS THE PLAINTIFFS' ALLEGED INJURY

Courts should not consider or award overbreadth remedies when as-applied relief will fully redress the plaintiff's alleged injuries. The Supreme Court so held in *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469 (1989):

> It is not the usual judicial practice, however, nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily—that is, before it is determined that the statute would be valid as applied.... [F]or reasons relating both to the proper functioning of courts and to their efficiency, the lawfulness of the particular application of the law should ordinarily be decided first.

*Id.* at 484-86. Overbreadth analysis should occur only when the plaintiffs concede that their speech or conduct is *unprotected* by the First Amendment, because as-applied relief cannot be used to restrain government officials from enforcing a statute against constitutionally unprotected conduct. *See United States v. Hansen*, 599 U.S. 762, 769 (2023) (considering overbreadth claim raised by litigant who conceded that his speech was constitutionally unprotected); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980) (overbreadth doctrine allows "a litigant whose own activities are unprotected" to "nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court.").

The district court's opinion never even cites *Fox* or acknowledges its existence. *See* Opinion, R.81, PageID#1101-1132. But *Fox* makes short work of the plaintiffs' overbreadth claim. The plaintiffs are not alleging, and the district court did not hold, that the plaintiffs' abortion-counseling speech is *unprotected* by the First Amendment. To the contrary, the plaintiffs and the district court are insisting that the plaintiffs' abortion counseling is constitutionally protected speech and expression. *See* Complaint, R.1, PageID#13 (¶ 72) ("Public Chapter No. 1032 is unconstitutional as applied to the Plaintiffs' intended speech."); Opinion, R.81, PageID#1111 ("The state may not … criminalize speech recruiting a minor to procure a legal abortion in another state. Because plaintiffs wish to speak about legal abortions and seek to help minors obtain legal, out-of-state abortions, their intended speech is protected under the First Amendment."). So the district court (at most) should have issued an as-applied remedy that restrains the defendants from enforcing section 39-15-201(a)'s "recruitment" prong against Welty and Behn's abortion-counseling and abortion-promoting speech. Courts have no business conducting "overbreadth" analysis when an as-applied remedy is adequate for the job. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*" (emphasis added)); *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007) ("[A]s-applied challenges are the basic building blocks of constitutional adjudication." (citation and inter-

nal quotation marks omitted)). The Court should reject the district court's "overbreadth" remedy for that reason alone.

### III. The Plaintiffs Were Required To Prove A "Lopsided Ratio" When Comparing The Unconstitutional And Constitutional Applications Of Section 39-15-201(a)'s "Recruitment" Prong

*United States v. Hansen*, 599 U.S. 762 (2023), requires litigants seeking overbreadth remedies to prove a "lopsided ratio" when comparing a law's "unconstitutional applications" to the statute's "lawful sweep":

> Because it destroys some good along with the bad, invalidation for overbreadth is strong medicine that is not to be casually employed. To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. *In the absence of a lopsided ratio*, courts must handle unconstitutional applications as they usually do—case-by-case.

*Id.* at 770 (emphasis added) (citations and internal quotation marks omitted); *see also id.* at 784 ("[T]he ratio of unlawful-to-lawful applications is *not lopsided enough* to justify the 'strong medicine' of facial invalidation for overbreadth." (emphasis added)). The plaintiffs failed to demonstrate a "lopsided ratio" when comparing the supposedly unconstitutional applications of section 39-15-201(a)'s "recruitment" prong with its legitimate sweep, and the district court defied *Hansen* by failing to make this required finding.

The district court also bungled its overbreadth analysis by failing to acknowledge that section 39-15-201(a) may be constitutionally enforced against speech that "recruits" minors to obtain abortion pills in violation of

the Comstock Act, or that solicits or facilitates illegal self-managed abortions in Tennessee. *See* pp. 4-7, pp. 11-15, *supra*. All of this speech is integral to unlawful conduct—and all of it is prohibited by section 39-15-201(a)'s "recruitment" prong, which applies "regardless of where the abortion is to be procured" and "regardless of whether the abortion-inducing drug is obtained":

> An adult commits the offense of abortion trafficking of a minor if the adult intentionally recruits, harbors, or transports a pregnant unemancipated minor within this state for the purpose of:
>
>> (1) Concealing an act that would constitute a criminal abortion under § 39-15-213 from the parents or legal guardian of the pregnant unemancipated minor;
>>
>> (2) Procuring an act that would constitute a criminal abortion under § 39-15-213 for the pregnant unemancipated minor, regardless of where the abortion is to be procured; or
>>
>> (3) Obtaining an abortion-inducing drug for the pregnant unemancipated minor for the purpose of an act that would constitute a criminal abortion under § 39-15-213, regardless of where the abortion-inducing drug is obtained.

Tenn. Code § 39-15-201(a). The district court blew off the possibility that section 39-15-201(a) might be enforced against conduct that facilitates illegal abortions in Tennessee by denying that anyone would ever attempt to violate section 39-15-201(a) in this manner. *See* Opinion, R.81, PageID#1126 ("Why would an adult recruit a Tennessee minor to obtain an illegal abortion in Tennessee, or another state where it is illegal, when many other states allow

for legal abortion and a Tennessee minor can legally obtain abortion medication drugs?"). But it is *not* legal for a Tennessee minor to "obtain abortion medication drugs," as this conduct is specifically outlawed by the Comstock Act,[6] and it is *not* legal for a Tennessee minor to self-abort with abortion-inducing drugs, even though the minor cannot be punished for doing so.[7] More importantly, both Welty and Behn testified that they help minors obtain abortion pills, which is criminal conduct under 18 U.S.C. §§ 1461-1462, and that they counsel minors on how to self-abort a pregnancy, which is a crime under Tennessee's abortion ban. *See* Tr. of Prelim. Inj. Hearing, R.35, PageID#364 (14:10-12), PageID#365 (15:14-16), PageID#366 (16:3-10), PageID#375 (25:1-2), PageID#369 (19:16-18); *id.* at PageID#391 (41:20-42:2), PageID#392 (42:17-22). So the factual premise of the district court's argument is false, and the evidence in the record proves that Welty and Behn are soliciting and facilitating illegal self-managed abortions in Tennessee despite the state's criminal prohibitions on these abortion-assistance activities. *See* Tenn. Code § 39-15-213(b)-(c); Tenn. Code § 39-11-402(2); Tenn. Code § 39-11-407; Tenn. Code § 39-12-105(a).

In all events, the overbreadth analysis requires courts to compare the scope of the *statute's* constitutional applications against the scope of its unconstitutional applications. It is not concerned with the number of times individuals choose to violate the statute, nor is it concerned with the fraction of

---

6.     *See* 18 U.S.C. §§ 1461-1462; *see also* pp. 4-5, 11-12, *supra*.

7.     *See* Tenn. Code § 39-15-213(b)-(c); *see also* pp. 5-7, 12-15, *supra*.

actual statutory violations that involve constitutionally protected speech. A court is to consider *only* the range of prohibited conduct as defined in the statute, and ask whether a "lopsided ratio" of the outlawed conduct is constitutionally protected.

The district court erred by basing its overbreadth ratio on the behavior of those who will choose to violate section 39-15-201(a)'s recruitment provision, and declaring the statute overbroad because it thought that a substantial fraction of the actual violations of the "recruitment" prong will involve constitutionally protected speech. The district court was required to focus exclusively on the statutory definition of the conduct prohibited by section 39-15-201(a), and conduct an overbreadth inquiry that compares the statute's constitutional and unconstitutional applications. The overbreadth inquiry is unconcerned with how section 39-15-201(a)'s recruitment provision is likely to be violated, which is nothing more than bald conjecture.

## IV. THE DISTRICT COURT IMPROPERLY AWARDED A UNIVERSAL REMEDY

The district court issued a "universal" remedy that enjoins the defendants from enforcing section 39-15-201(a)'s recruitment provision against anyone—even though Welty and Behn did not sue as class representatives, and even though it is undisputed that an injunction limited to Welty and Behn will fully redress the plaintiffs' Article III injuries. This was impermissible for many reasons.

The first (and most obvious) problem is that the district court's universal remedy violates the holding in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), which prohibits the federal judiciary from issuing "universal" remedies that extend beyond the named plaintiffs to a lawsuit (absent circumstances not present here). *See id.* at 841-59; *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute."); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*" (emphasis added)).

The district court tried to escape the holding of *CASA* by characterizing its remedy as a "statewide injunction" rather than a "universal injunction." *See* Opinion, R.81, PageID#1130 ("While universal injunctions lack 'historical pedigree,' statewide injunctions appear to have more historical support."). That is wordplay. The district court's judgment restrains the defendants from enforcing section 39-15-201(a)'s "recruitment" prong against *anyone*. See Judgment, R.84, PageID# 1138 ("[D]efendants are enjoined from enforcing Tenn. Code Ann. § 39-15-201 (a)'s recruitment provision until otherwise ordered by the court."). This is a universal injunction. That the universal injunction is directed a state law rather than a federal policy does not make it any less impermissible under *CASA*.

The district court also observed that *CASA* "does not address the need for broader injunctions in the First Amendment context." Opinion, R.81, PageID#1131. But that is not an excuse to flout the holding of *CASA*. The justices in the *CASA* majority were well aware of the overbreadth doctrine when they wrote and joined the opinion, and they did not carve out any exception for First Amendment overbreadth remedies even as they went out of their way to preserve the possibility of universal remedies in other contexts. *See, e.g.*, *CASA*, 606 U.S. at 847 n.10 ("Nothing we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action.").

Beyond the holding of *CASA*, the plaintiffs do not even have Article III standing to seek a remedy that restrains the defendants from enforcing section 39-15-201(a) against others. The plaintiffs have not alleged or shown that they will suffer Article III injury if the statute is enforced against anyone else, and they are not suing as a representative of others who are suffering injury from the statewide enforcement of section 39-15-201(a). Nor have the plaintiffs alleged or shown that a universal remedy is needed to redress their Article III injuries. So the district court's universal remedy not only contravenes the Supreme Court's remedial doctrines, it also violates the rules of Article III standing by allowing the plaintiffs to sue to enjoin enforcement actions that do not injure or affect them in the slightest.

Finally, it is a non sequitur to claim that a court can issue a universal remedy whenever it thinks a statute is unconstitutional "on its face." Opin-

ion, R.81, PageID#1106. A plaintiff's entitlement to a universal or statewide remedy has nothing to do with whether the challenged statute is unconstitutional across the board, or whether it has discrete provisions or applications that can be severed and preserved. Even when a plaintiff demonstrates that a statute is unconstitutional in all its applications, a district court *still* cannot enjoin enforcement against non-parties unless it has certified a plaintiff class or unless the plaintiff has shown that broader relief is needed to redress its injuries. *See Arizona v. Biden*, 40 F.4th 375, 395-96 (6th Cir. 2022) (Sutton, C.J., concurring) ("A valid Article III remedy 'operate[s] with respect to specific parties,' not with respect to a law 'in the abstract.'" (quoting *California v. Texas*, 141 S. Ct. 2104 (2021)).

The Court should, at the very least, vacate the district court's judgment to the extent it protects anyone other than the named plaintiffs. *See United States v. National Treasury Employees Union*, 513 U.S. 454, 477-78 (1995) ("[W]e neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants"). And it should admonish the district courts for awarding classwide relief in the absence of a certified class.

## V. THE DISTRICT COURT'S JUDGMENT WILL NOT PROTECT THOSE WHO VIOLATE SECTION 39-15-201(a) IF THE JUDGMENT IS EVENTUALLY NARROWED OR VACATED

If the district court's judgment is ever narrowed or vacated, either by this Court or by the Supreme Court of the United States, then the state may enforce section 39-15-201(a) against anyone who violated the statute while the

erstwhile injunction was in effect. A vacated injunction provides no shield to those who chose to violate a statute in reliance on that erroneous ruling. *See Edgar v. MITE Corp.*, 457 U.S. 624, 651 (1982) (Stevens, J., concurring in part and concurring in the judgment); *Lake v. HealthAlliance Hospital Broadway Campus*, 738 F. Supp. 3d 208, 220 n.14 (N.D.N.Y. 2024) ("[I]f an injunction is dissolved the State may enforce the statute against violators for conduct that occurred while the injunction was in place.").

An injunction or declaratory judgment does not enjoin or suspend the disputed statute. It merely tells the enjoined officials not to initiate enforcement proceedings while the injunction remains in effect. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."). But that hasn't stopped the media from reporting that the district court's judgment has "blocked" section 39-15-201(a)'s recruitment prong, implying that the statute is formally suspended and that anyone can flout the law without consequence—even if the judgment winds up getting narrowed or vacated. *See* Anita Waldman, Tennessee appeals judge's decision to block law making it a crime to help minors get an abortion, Tennessee Lookout (Sept. 4, 2025), available at http://bit.ly/4rdSy50 (reporting that the district court "permanently blocked a portion of state law that made it a crime to help minors obtain an out-of-state abortion."). And the district court's opinion does nothing to dispel this commonly held misunderstanding of judicial remedies.

Section 39-15-201(a) remains on the books and continues to exist as the law of Tennessee. *See Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring) ("[W]e do not remove—'erase'—from legislative codes unconstitutional provisions."). The district court's judgment and injunction are nothing more than a temporary non-enforcement policy imposed on the defendants, which leaves present-day lawbreakers subject to criminal prosecution if the injunction is later narrowed or vacated. *See* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 938-42, 986-1000 (2018). The federal judiciary has no authority to confer preemptive pardons on those who knowingly violate statutes in reliance on court decisions that wrongly declare laws unconstitutional or wrongly enjoin their enforcement. *See MITE Corp.*, 457 U.S. at 653 (Stevens, J., concurring in part and concurring in the judgment) ("There simply is no constitutional or statutory authority that permits a federal judge to grant dispensation from a valid state law."); *Lake*, 738 F. Supp. 3d at 220 n.14. The Court should make this clear regardless of how it rules on the constitutionality of the statute. And it should warn Welty and Behn that the district court's injunction will not protect them from civil liability in state court, subsequent criminal prosecution, or disbarment and loss of licensure if the injunction is ever vacated or narrowed on appeal.

# CONCLUSION

The judgment of the district court should be reversed.

Respectfully submitted.

/s/ Jonathan F. Mitchell

THOMAS BREJCHA
PETER BREEN
B. TYLER BROOKS
Thomas More Society
309 West Washington Street
Suite 1250
Chicago, Illinois 60606
(312) 782-1680 (phone)

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: November 20, 2025

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

### with type-volume limitation, typeface requirements, and type-style requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,476 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*

Dated: November 20, 2025

## CERTIFICATE OF SERVICE

I certify that on November 20, 2025, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Sixth Circuit and served through CM/ECF upon all counsel of record in this case.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*